UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM ARNOLD, | : | 3:04cv2114 (WWE) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, SHARRON | : | |
| LAPLANTE, SHOWN BROWN, | : | |
| CHARLES LEE, MARY JOHNSON, | : | |
| EDWARD BLANCHETTE, SHERYL | : | |
| MALCOLM, MARK BUCHANAN, | : | |
| GANPAT CHOUHAN, MARY MARTOS, | : | |
| PATRICIA OTTOLINI, | : | |
|     Defendants. | : | |

**MEMORANDUM OF DECISION ON MOTION TO DISMISS**

In this action, plaintiff William Arnold, a former inmate of the Hartford Correctional Center ("HCC") and the Corrigan Correctional Institute ("CCI") of the Connecticut Department of Corrections ("CDOC"), alleges violation of his constitutional rights pursuant to 42 U.S.C. § 1983 and medical malpractice pursuant to Connecticut common law. Plaintiff alleges claims against Sharron LaPlante, M.D.; Shawn Brown, a medical administrator at HCC; Charles Lee, Warden of HCC; Mary Johnson, Director of Medical Treatment at CDOC; Edward Blanchette, Clinical Director of CDOC; Sheryl Malcolm and Mark Buchanan, Members of the Correctional Managed Health Care Utilization Review Committee; Ganpat Chouhan, M.D.; Mary Martos, a Medical Administrator at CCI; and Patricia Ottolini, Medical Director for Health for CDOC. Specifically, the complaint alleges (1) violation of the Due Process Clause of the United States Constitution against defendants LaPlante, Blanchette and Chouhan (count one); (2) deliberate indifference to his medical needs against defendants LaPlante, Blanchette and Chouhan (count two); (3) violation of due process based on supervisory liability against defendants Brown, Lee,

Johnson, Martos and Ottolini (count three); (4) deliberate indifference to his medical needs based on supervisory liability against defendants Brown, Lee, Johnson, Martos and Ottolini (count four); (5) violation of his due process rights based on the policy not to perform blood lipid tests for unsentenced inmates against defendants Blanchette, Malcolm and Buchanan (count five); (6) deliberate indifference to his medical needs based on the policy not to perform blood lipid tests for unsentenced inmates against defendants Blanchette, Malcolm, and Buchanan (count six); (7) medical malpractice pursuant to state law against the State of Connecticut (count seven); and (8) medical malpractice pursuant to state law against LaPlante, Blanchette and Chouhan (count eight).

Defendants have filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. For the following reasons, the motion to dismiss will be denied in part.

## BACKGROUND

For purposes of ruling on this motion, the Court takes the facts alleged in the complaint to be true.

At the time relevant to this action, plaintiff, an inmate at HCC and CCI, had diabetes, high cholesterol and high triglyceride levels. At the time relevant to this case, the CDOC medical facilities were required to establish a Diabetes Chronic Care Clinic for management of the needs of diabetic inmates. The Correctional Managed Health Care Policy and Procedures for Use Within the CDOC contained policies and procedures for establishing a Diabetes Chronic Care Clinic ("Diabetes Protocol") and a Therapeutic Diet ("Diet Protocol"). The Diet Protocol required that the inmate be evaluated regularly at least every six months.

2

Plaintiff was denied proper treatment for his diabetes at HCC by defendant LaPlante, who replaced his insulin prescription with one known as Glucophage that plaintiff knew caused him severe cramping and diarrhea. Dr. LaPlante also refused to prescribe for plaintiff a special low sodium/high protein diet that would help him maintain his healthy status. Dr. LaPlante further refused to request plaintiff's past medical records so that he could verify and continue proper treatment of plaintiff's health conditions. When plaintiff was transferred to CCI, his blood sugar level was found to be dangerously high and he was immediately injected with insulin.

At CCI, plaintiff was evaluated by medical staff, including Dr. Chouhan, and he was given medication to treat his diabetes. Dr. Chouhan did not immediately order a diabetic diet for plaintiff.

Plaintiff filed grievances regarding CCI's failure to provide him with diabetic meals and correct medication, and eventually, he was placed on an appropriate diet. However, the wrong food was served to him numerous times over his protestations.

The denial of proper medical treatment and diet at both facilities gave rise to plaintiff suffering multiple health problems, including pain, vomiting, dizziness, cramps, diarrhea, shortness of breath, headaches and loss of vision; and it led to plaintiff's emergency hospitalization related to his acute and chronic pancreatitis.

Even after hospitalization due to his pancreatitis attack, plaintiff did not receive his diabetic diet on a consistent basis, and he was on occasion prevented from going to the medical facility to obtain his medication. Plaintiff also went for weeks without the appropriate medication when the order for the medication had been sent but not filled.

Procedural History

Plaintiff brought this action pro se in December 2004.  That same month, plaintiff sought damages and permission to sue the State of Connecticut from the Office of the Claims Commissioner.

In September 2005, plaintiff brought a state court action alleging malpractice by defendants LaPlante, Chouhan, Buchanan and Malcolm.  The state court dismissed that action in January 2006 on the basis of sovereign immunity.

On June 29, 2006, plaintiff filed an amended complaint asserting for the first time claims against certain individuals in their individual capacities.  On October 25, 2007, plaintiff's case was dismissed for failure to comply with a prior order that he file an amended complaint setting forth the specific claims he had against each individual.

On April 3, 2007, the Claims Commissioner held a hearing on plaintiff's action. On April 20, 2007, the Claims Commissioner granted plaintiff permission to sue the State of Connecticut for medical malpractice within one year.

On March 19, 2008, plaintiff filed a state court action against the State of Connecticut and defendants LaPlante, Blanchette and Chouhan for medical malpractice.

On March 31, 2008, plaintiff moved to reopen the judgment of dismissal in this case, and he attached a proposed amended complaint that alleged his medical malpractice claims.  The motion to reopen was granted on March 31, 2009, and counsel was appointed with an amended complaint filed on October 17, 2011.

## DISCUSSION

Motion to Dismiss for Lack of Subject Matter Jurisdiction

The existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Motion to Dismiss for Failure to State a Claim

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009).

Sovereign Immunity

Defendants assert that the Court lacks subject matter jurisdiction over the claims

against the State of Connecticut and the defendants in their official capacities.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Supreme Court has interpreted the Eleventh Amendment to mean that states, as sovereigns, are immune from suit in federal court absent express consent by the state or abrogation of the immunity by Congress through Section Five of the Fourteenth Amendment. See Seminole Tribe v. Florida, 517 U.S. 44, 54–55 (1996). The Eleventh Amendment also protects state officials sued for damages in their official capacity. Kentucky v. Graham, 473 U.S. 159 (1985). In passing 42 U.S.C. § 1983, Congress had no intention of disturbing the state Eleventh Amendment immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

Plaintiff does not dispute that any claim brought pursuant to Section 1983 against an individual defendant in his or her official capacity is barred by the Eleventh Amendment. However, plaintiff argues that his medical malpractice claims against the state and state officials are not barred by sovereign immunity because he has received permission from the Claims Commissioner. Plaintiff maintains that he did not lose his grant of permission due to a late filing because he filed his proposed amended complaint on March 31, 2008 within one year of the Claims Commissioner's grant of permission. The Court agrees with plaintiff that the operative complaint filed on October 17, 2011 relates back to the proposed amended complaint filed with the motion to reopen that was granted on March 31, 2009.

Under Rule 15, the amendment of a pleading relates back to the date of the original pleading when the amendment asserts a claim arising out the conduct, transaction or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B); See Wells v. Harris, 185 F.R.D. 128, 131 (D. Conn. 1999). The later amended complaint presents in a more coherent fashion the same facts and claims that plaintiff had in his pro se capacity attempted to set forth. The medical malpractice claims will not be dismissed.

### Rooker-Feldman Doctrine

Defendants argue that the Rooker-Feldman doctrine bars this action. Rooker-Feldman applies to actions brought by a state-court loser complaining of injuries "caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 284 (2005). The Second Circuit has set out the four requirements of the Rooker–Feldman doctrine: (1) "the federal-court plaintiff must have lost in state court;" (2) "plaintiff must complain of injuries caused by a state-court judgment;" (3) "plaintiff must invite district court review and rejection of that judgment;" and (4) the "state-court judgment must have been rendered before the district court proceedings commenced." Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 83 (2d Cir. 2005).

In this instance, Rooker-Feldman does not bar plaintiff's federal action. The state court dismissal on the basis of sovereign immunity occurred prior to plaintiff's grant of permission to sue from the Claims Commissioner. Thus, the Court will not have to review the basis of the state court's judgment because plaintiff has obtained the

7

Claims Commissioner's permission to sue.

### Statutory Immunity

Defendants argue further that defendants LaPlante, Blanchette and Chouhan are statutorily immune from liability on claims sounding in negligence pursuant to Connecticut General Statutes § 4-165.

Section 4-165(a) provides immunity for state officers and employees from personal liability for damage or injury caused in the discharge of duties or scope of employment unless the conduct is found to be "wanton, reckless or malicious." In this instance, plaintiff's allegations of medical malpractice, deliberate indifference and failure to provide him adequate care form the basis for a finding of reckless or wanton conduct. The claims will not be dismissed on this basis.

### Supervisory Liability

Defendants argue that plaintiff has failed to allege the personal involvement of defendants Lee, Ottolini, Martos and Johnson in the asserted violation of constitutional rights.

Generally, courts have held that a plaintiff may show supervisory liability by demonstrating that defendant or defendants (1) actually and directly participated in the alleged unconstitutional acts; (2) failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) was grossly negligent in supervising the correctional officers who committed the constitutional violation; or (5) failed to take action in response to information regarding the occurrence of unconstitutional conduct.

See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Defendants assert that Iqbal limits supervisory liability to instances where the officials own individual actions caused the constitutional violation.  However, district courts, noting that it remains unclear whether Iqbal places such limitations on supervisory liability, have continued to apply the standard articulated by Colon.  See Aquart v. Sue Jacobowski, 2012 WL 1067486 (D. Conn. March 30, 2012).  Accordingly, the Court will consider whether plaintiff has satisfied any of Colon's elements for liability as to each supervisory defendant.

Here, the complaint alleges that plaintiff informed defendant Warden Lee by writing that he was not receiving adequate medical care and that Lee failed to take appropriate remedial steps.  Whether Lee did take proper action by relying on the professional judgment of trained medical personnel in light of the facts known to him remains a question for a jury to determine.  Accordingly, the action against Lee will not be dismissed.

Plaintiff alleges that Director of Health Services Ottolini was aware of his need for a diabetic diet but refused or failed to remedy the situation.  The complaint alleges that Ottolini confirmed her knowledge of his prescription for such diet in a letter dated October 13, 2004, and that she received grievances concerning the special dietary needs of diabetics from plaintiff and other inmates.  Accordingly, plaintiff's supervisory claim against Ottolini will not be dismissed.

However, the claims against Johnston and Martos will be dismissed.  Plaintiff states that one grievance concerning plaintiff's need for a diabetic diet was sent to Johnson and Martos in 2005.  However, the complaint fails to raise an inference that

either of these defendants, who are both health administrators, had the ability, but failed, to remedy the problem. Accordingly, plaintiff has not set forth supervisory liability as to these defendants.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss is GRANTED in part and DENIED in part. The supervisory claims against defendants Johnston and Martos are dismissed.

_____/s/_____
Warren W. Eginton
Senior U.S District Judge

Dated this 12th day of April 2012, at Bridgeport, Connecticut.